89 P.2d 6l9

**STATE v. GARCIA.**

No. 4416.

Supreme Court of New Mexico.

Jan. 30, 1939.

Rehearing Denied April 24, 1939.

Luis E. Armijo, of Las Vegas, for appellant.

Frank H. Patton, Atty. Gen., and A. M. Fernandez, Asst. Atty. Gen., for the State.

BRICE, Justice.

The defendant was convicted of assault with a deadly weapon and sentenced to serve a term in the penitentiary.

The principal question is whether there was substantial evidence to support the verdict of guilty returned by the jury.

The complaining witness, Felix Valencia, was a deputy sheriff and had been instructed by the sheriff of San Miguel County to disarm the defendant who was a night watchman at the mine of the American Metal Company at Torreon, in San Miguel County. According to Valencia's version of the affair, the parties had been friends for ten years and had never had a disagreement. He testified that he went to the mine

at eight o'clock in the morning, looking for the defendant. After inquiry he located him and asked him by what authority he was carrying a gun, which defendant then had in a holster at his side. The defendant answered, "Here's the son-of-a-bitch that threw me; here is the authority," and fired at the witness four times.

He then detailed the continuation of the fight which resulted in both men being wounded, and their separation by W. M. Miller, the officer in charge of the mine guards. It appears from Valencia's testimony that the defendant shot at him twice more (six times in all) before he (the witness) could draw his gun; after which he shot at the defendant two or three times.

W. M. Miller, who was about fifty yards away, testified that a garage was between him and the combatants, when he heard four or five shots and started toward the sound. After he passed around the obstruction he saw the defendant with his gun in his hand walking toward Valencia, shooting at him and Valencia striking at Garcia with a gun. Valencia did not fire after Miller saw them. Miller stated that three of the four shots he first heard were fired rapidly, then after a pause two more, then a pause and four more followed. An examination of the guns showed that six of these shots were fired by the defendant and three by Valencia. Valencia's gun had been jammed and apparently could not be fired after his third shot. The two men were clubbing each other with their guns when Mr. Miller arrived on the scene and separated them.

The evening before, Mr. Miller had ordered defendant to take his gun back to his home; but defendant answered that he had talked to the sheriff and had told him that he (the defendant) was going to carry his gun. The sheriff testified that he had refused to give defendant a commission as a deputy sheriff. So far as Miller's testimony discloses, either of the men may have fired the first three shots, though in a measure it corroborates the defendant, as Garcia was still shooting at Valencia when Miller first saw them, and Valencia had fired his three shots.

Three men who claimed to be eye witnesses to the fight, together with the defendant himself, testified that Valencia fired the first shot. Marston, one of the witnesses, testified that Valencia fired two shots before Garcia could get his gun loose from his shirt and that Garcia fired the third shot. Roman Garcia testified that he saw Valencia fire the first shot after which his back was toward the combatants. Salvador Gonzales testified that Valencia fired the first shot at Garcia, after which they began shooting at each other. He did not know who fired the second or subsequent shots, but heard several fired.

The defendant testified that Mr. Miller had told him to take his gun home and this he was doing at the time he was accosted by Valencia, who called him to where he (Valencia) was waiting for him. That when he got close Valencia asked him if he had a gun. He replied, "Yes;" and Valencia then asked him to deliver the gun to him.

Defendant then stated, "He did not give me a chance to speak, but fired at me three times. The first shot hit me in the back. I had a club in my left hand and my lunch bucket in my right. I approached him, trying to dodge and ward off the shots. I pulled my gun and, feeling that he would kill me, I shot at him three times. Valencia fired the first shot. I had my gun in a leather holster at my left side."

Mr. Miller testified that he did not see any of the three witnesses who claimed to have been present at the time of the fight.

It will thus be seen that the testimony of Valencia, if true, supports the verdict and is substantial. The fact that his version of the affair is opposed by the testimony of four witnesses was a matter primarily for the consideration of the jury and then for the trial court upon a motion for a new trial. They heard the witnesses testify and observed their demeanor, and were much better situated to judge the weight of the testimony than this court. It may be that the jury concluded that the testimony of the defendant, and his three witnesses who claimed to have seen the difficulty, was fabricated by them; though we are impressed with the fact that apparently the evidence preponderates heavily in favor of the defendant.

It is stated in defendant's brief, and confirmed by the appellee, that Valencia is now serving a term in the penitentiary for a murder committed subsequent to the defendant's conviction for the crime here charged against him; a matter that cannot be considered by us.

Another question is whether the defendant was denied his constitutional right to have the charge and testimony interpreted to him in a language that he understands, as provided by Sec. 14 of Art. 2 of the State Constitution. No objection was made to the interpretation of English into Spanish and Spanish into English, until the time the instructions of the court to the jury were being given; when the following occurred:

Judge Armijo (Counsel for defendant): "I don't like to object to the interpreter, but I believe the rights of the defendant are being jeopardized. I might help."

The Court: "I don't mind."

We find nothing else in the record to support the assignment of error. It was defendant's privilege to object to the interpreter, or his interpretation from one language to another, but judging from the record, his counsel was satisfied with calling attention to erroneous interpretation and suggesting corrections. The question was raised on a motion for a new trial and in overruling the motion the trial court stated:

"The Court further finds that the Court Interpreter, Canuto Ramirez, who acted during the trial of this cause, was corrected in his interpretation on a number of occasions both by the Court, who has some knowledge of both the Spanish and the English languages, and by counsel for the

defendant who likewise has knowledge of both the Spanish and the English languages, that on all occasions when errors were made in the interpretation either from the Spanish language to the English language and from the English language to the Spanish language, such corrections were either made by the Court, or permitted by the Court or counsel.

"That one of the Jurors understood no Spanish, and that other jurors understood no English, and that some of the jurors understood both English and Spanish; that no objection was made by counsel for the defendant up to the time that the instructions of the Court were being given, at which time counsel for the defendant made objection to an interpretation made, and counsel were permitted by the Court to correct such interpretation, which was done, and counsel were advised by the Court that in case of any misinterpretation they would be permitted to offer corrections.

"That in all instances during the trial where misinterpretations were noticed either by the Court or counsel, the same were called to the attention of the interpreter and corrected, and that such grounds for new trial are not well taken and should be overruled."

No question was raised in the trial court at a time when the court might have secured another interpreter. But in any event the findings of the court clearly show that the defendant was not injured and that errors in interpretation were corrected in all instances. There is no basis for the assign-ment of error. State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1.

The judgment of the district court is affirmed.

It is so ordered.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.